FRANK W. VERITO, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

WILLIAM J. VERITO, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4303–63, 4304–63. Filed January 14, 1965.

*Arthur L. Birkholz*, for the petitioners.
*Melvin E. Pearl*, for the respondent.

#### OPINION

FAY, *Judge:* The Commissioner determined deficiencies in income tax for the taxable period ended June 2, 1961, against 19 transferor

corporations, in the aggregate amount of $22,296.54. These proceedings involve the liability of the petitioners as transferees of the assets of the aforementioned transferor corporations.[1] The only issue to be decided is whether gain realized on certain sales of securities by the aforementioned transferor corporations should go unrecognized at the corporate level by virtue of section 337 of the Internal Revenue Code of 1954.[2]

All of the facts have been stipulated, are so found, and the stipulation of facts together with the exhibits attached thereto is incorporated herein by this reference. Those necessary to an understanding of our inquiry are recited below.

Petitioner Frank W. Verito (hereinafter referred to as Frank) and Amelia V. Verito are husband and wife residing in Milwaukee, Wis. They filed their joint Federal income tax return for the taxable year 1961 with the district director of internal revenue, Milwaukee, Wis.

Petitioner William J. Verito (hereinafter referred to as William) and Mona C. Verito are husband and wife residing in Milwaukee, Wis. They filed their joint Federal income tax return for the taxable year 1961 with the district director of internal revenue, Milwaukee, Wis.

Frank and William were the major stockholders and principal officers of 45 separate corporations all organized under the laws of the State of Wisconsin. The corporations were engaged in the bakery business in Milwaukee. On or before October 17, 1960, the 45 corporations, which were formerly known as Wm. H. Heinemann Bakeries, Inc., changed their corporate names to Verito Investment Corp. (hereafter referred to as Verito). The 19 corporations involved in these proceedings will hereafter be referred to as the transferor corporations.

The transferor corporations filed their Federal corporate income tax returns for the taxable period ended June 2, 1961, with the district director of internal revenue, Milwaukee, Wis.

The fiscal year of Verito commenced on September 1. On September 16, 1960, at special meetings of the stockholders, the following resolutions were unanimously adopted:

RESOLVED: That the Board of Directors is hereby authorized to sell or exchange all or any part of this corporation's property and assets upon such terms and conditions and for such consideration, which may be in whole or in part shares of stock in any other corporation as the Board of Directors shall deem expedient and for the best interests of the corporation.

RESOLVED: That subsequent to completion of the sale of its operating assets but within a period not to exceed twelve months from the date of adoption

---

[1] The petitioners in both dockets have conceded that if it is determined that the 19 transferor corporations are liable for the deficiencies in income tax the petitioners are liable as transferees.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.

hereof that this corporation be dissolved and that the officers of this corporation be directed to file a statement of intent to dissolve with the Secretary of State of the State of Wisconsin.[3]

On September 20, 1960, an offer for the sale of the assets of Verito was made to National Food Stores, Inc. The offer included the sale of all of the assets of Verito. It was part of the offer that Verito, then known as Wm. H. Heinemann Bakeries, Inc., would change the name of each corporation to one not conflicting with the name of Wm. H. Heinemann Bakeries, Inc., and that the names relinquished would be made available as corporate names to the nominee of National Food Stores, Inc. It was for this sole reason that the names of the transferor corporations were changed. The aggregate sales price was to be $778,000 payable in 25,000 shares of common stock of National Tea Co. and the balance in cash. This price did not include the inventory on hand, which was to be valued at cost at the date of closing. The offer of sale was accepted by National Food Stores, Inc., on September 26, 1960. Closing of the sale was effected October 17, 1960. Verito, including the transferor corporations, as of October 17, 1960, had received the proceeds from the sale of assets to National Food Stores, Inc. The aggregate proceeds received on the sale were 25,000 shares of common stock of National Tea Co. and $477,562.92 in cash.

Subsequent to the sale of the operating assets of Verito, but prior to the liquidations, the transferor corporations made temporary investments in various listed stocks, which were sold[4] during the period and resulted in an aggregate long-term gain of $13,354.61 and short-term gain of $64,071.77.

The stock market transactions of the 19 transferor corporations between October 17, 1960, and May 31, 1961, the date of distribution to the shareholders, are set forth below:

| | Date purchased | Date sold | Number of shares | Cost | Selling price | Gain (loss) |
|---|---|---|---|---|---|---|
| VERITO NO. 1 [1] | | | | | | |
| *Long-term capital gains* | | | | | | |
| National Tea Co.[2] | Oct. 17, 1960 | May 18, 1961 | 100 | $1,637.50 | $1,820.49 | $182.99 |
| | | Apr. 21, 1961 | 200 | 3,275.00 | 3,814.35 | 539.35 |
| | | ----do------ | 800 | 13,100.00 | 15,747.47 | 2,647.47 |
| | | Apr. 26, 1961 | 500 | 8,187.50 | 9,672.11 | 1,484.61 |
| | | Apr. 27, 1961 | 3,000 | 49,125.00 | 57,625.19 | 8,500.19 |
| Net gain (loss) | | | | | | 13,354.61 |

[1] The large number of transactions can be attributed to the fact that this corporation had assets over $500,000, while none of the other corporations' assets exceeded $50,000.
[2] The National Tea Co. stock was acquired by the transferor corporations as part of the proceeds of the "liquidating sale."

[3] Identical resolutions were unanimously adopted by all of the 45 corporations.

[4] Apparently only the 19 transferor corporations made temporary investments in various listed stocks. The record is silent as to whether the other 26 corporations made any temporary investments.

| | Date purchased | Date sold | Number of shares | Cost | Selling price | Gain (loss) |
|---|---|---|---|---|---|---|
| **Short-term capital gains** | | | | | | |
| Tennessee Gas Transmission | Nov. 25, 1960 | Feb. 18, 1961 | 500 | $11,902.77 | $11,893.62 | ($9.15) |
| Martin Co | Nov. 28, 1960 | Feb. 20, 1961 | 600 | 36,621.12 | 35,540.61 | (1,080.51) |
| | Feb. 21, 1961 | Mar. 10, 1961 | 1,000 | 33,857.50 | 36,606.63 | 2,749.13 |
| American Tobacco | Dec. 8, 1960 | Feb. 17, 1961 | 200 | 12,402.96 | 14,667.85 | 2,264.89 |
| New York, Chicago, & St. Louis RR. Co | _do | _do | 200 | 7,726.41 | 7,885.61 | 159.20 |
| Standard Oil of New Jersey | _do | _do | 200 | 7,877.15 | 9,103.98 | 1,226.83 |
| Magnavox | Dec. 14, 1960 | Feb. 18, 1961 | 200 | 8,580.76 | 11,297.55 | 2,716.79 |
| Bell & Howell | _do | _do | 517 | 24,629.82 | 30,179.76 | 5,549.94 |
| | Feb. 21, 1961 | Apr. 28, 1961 | 200 | 12,190.10 | 12,196.53 | 6.43 |
| Aluminum Standard | Jan. 5, 1961 | Feb. 19, 1961 | 500 | 16,552.05 | 16,295.42 | (256.63) |
| General Electric | Jan. 10, 1961 | Apr. 8, 1961 | 300 | 21,675.00 | 19,343.31 | (2,331.69) |
| Crowell-Collier Publishing | Jan. 14, 1961 | Feb. 20, 1961 | 100 | 4,365.88 | 4,315.59 | (50.29) |
| Sperry Rand | Jan. 20, 1961 | Feb. 12, 1961 | 1,500 | 36,152.15 | 34,311.94 | (1,840.21) |
| | | May 26, 1961 | 30 | 690.00 | 952.16 | 262.16 |
| Spiegel, Inc | Jan. 26, 1961 | Feb. 18, 1961 | 300 | 14,340.82 | 14,924.31 | 583.49 |
| Ford Motor | Feb. 3, 1961 | Feb. 20, 1961 | 100 | 7,033.64 | 6,734.70 | (298.94) |
| | Feb. 21, 1961 | Apr. 18–24, 1961 | 1,000 | 69,709.55 | 81,835.47 | 12,125.92 |
| | May 17, 1961 | May 25, 1961 | 500 | 44,739.52 | 43,917.49 | (822.05) |
| Singer Manufacturing Co | Feb. 14, 1961 | Feb. 25, 1961 | 300 | 22,639.76 | 21,252.89 | (1,386.87) |
| Texas Gas Transmission Corp | _do | Apr. 14, 1961 | 100 | 3,725.00 | 3,631.81 | (93.19) |
| Singer | Feb. 21, 1961 | Apr. 30, 1961 | 200 | 14,357.54 | 15,891.28 | 1,533.74 |
| Helene Curtis | _do | Apr. 28, 1961 | 500 | 20,496.52 | 23,282.50 | 2,785.98 |
| Caterpillar Tractor | Feb. 25, 1961 | May 25, 1961 | 500 | 17,996.83 | 19,154.70 | 1,157.87 |
| Murray Ohio Manufacturing | Mar. 2, 1961 | Apr. 20, 1961 | 200 | 10,088.26 | 10,099.25 | 10.99 |
| American Machine & Foundry | Mar. 17, 1961 | Apr. 22, 1961 | 300 | 34,839.18 | 36,107.45 | 1,268.27 |
| Interstate Department Stores | Apr. 8, 1961 | Apr. 26, 1961 | 250 | 21,834.11 | 23,118.36 | 1,284.25 |
| Chrysler Corp | Apr. 26, 1961 | Apr. 29, 1961 | 500 | 48,229.04 | 23,009.00 | (1,105.52) |
| | | May 1, 1961 | 500 | ----------- | 21,206.31 | (2,908.21) |
| Net gain (loss) | | | | | | 23,502.62 |
| Total gain | | | | | | 36,857.23 |
| **VERITO INVESTMENT CORP. NO. 13** | | | | | | |
| **Short-term capital gains** | | | | | | |
| Corn Products Co | Dec. 23, 1960 | Feb. 19, 1961 | 100 | 8,397.35 | 8,257.55 | (139.80) |
| Edo Corp | Mar. 1, 1961 | Apr. 23, 1961 | 300 | 8,159.82 | 10,386.52 | 2,226.70 |
| Net gain (loss) | | | | | | 2,086.90 |
| **VERITO INVESTMENT CORP. NO. 20** | | | | | | |
| **Short-term capital gains** | | | | | | |
| National Tea Co | Oct. 17, 1960 | Feb. 11, 1961 | 500 | 8,187.50 | 8,423.00 | 235.50 |
| Ford Motor Co | Dec. 29, 1960 | Feb. 21, 1961 | 100 | 6,795.90 | 6,734.70 | (61.20) |
| G.M.A.C | Nov. 26, 1960 | Mar. 2, 1961 | 3,000 | 2,021.59 | 2,031.62 | 10.03 |
| Metro-Goldwyn-Mayer | Feb. 14, 1961 | Feb. 24, 1961 | 200 | 9,661.13 | 9,601.16 | (59.97) |
| Spiegel, Inc | Feb. 21, 1961 | Apr. 14, 1961 | 100 | 4,984.45 | 6,147.94 | 1,163.49 |
| | Mar. 21, 1961 | May 26, 1961 | 5 | 260.00 | 244.85 | (15.15) |
| Atlantic Refining | Mar. 3, 1961 | Mar. 23, 1961 | 100 | 5,056.51 | 5,299.42 | 242.91 |
| Helene Curtis | Mar. 23, 1961 | Apr. 28, 1961 | 100 | 4,675.00 | 4,962.38 | 287.38 |
| Net gain (loss) | | | | | | 1,802.99 |
| **VERITO INVESTMENT CORP. NO. 21** | | | | | | |
| **Short-term capital gains** | | | | | | |
| National Tea | Oct. 17, 1960 | Feb. 11, 1961 | 500 | 8,187.50 | 8,385.75 | 198.25 |
| G.M.A.C | Nov. 30, 1960 | Apr. 12, 1961 | 3,000 | 3,031.34 | 3,001.41 | (29.93) |
| Crowell-Collier Publishing Co | Jan. 14, 1961 | Feb. 21, 1961 | 200 | 8,731.51 | 8,639.46 | (92.05) |
| Square Deal | Feb. 14, 1961 | _do | 300 | 9,931.29 | 9,926.39 | (4.90) |
| Spiegel, Inc | Feb. 21, 1961 | Apr. 14, 1961 | 100 | 4,984.45 | 6,147.94 | 1,163.49 |
| | | May 26, 1961 | 5 | 260.00 | 244.85 | (15.15) |
| Ennis Business Forms | Apr. 12, 1961 | May 10, 1961 | 100 | 2,575.00 | 2,873.84 | 298.84 |
| Net gain (loss) | | | | | | 1,518.55 |

| | Date purchased | Date sold | Number of shares | Cost | Selling price | Gain (loss) |
|---|---|---|---|---|---|---|
| **VERITO INVESTMENT CORP. NO. 22** | | | | | | |
| *Short-term capital gains* | | | | | | |
| G.M.A.C | Dec. 2, 1960 | Mar. 2, 1961 | 3,000 | $3,032.42 | $3,046.49 | $14.07 |
| Jones & Laughlin Co | Jan. 4, 1961 | Feb. 17, 1961 | 200 | 11,389.45 | 12,595.81 | 1,206.36 |
| Jones & Laughlin | Feb. 21, 1961 | Apr. 22, 1961 | 200 | 13,015.92 | 13,544.62 | 528.70 |
| Net gain (loss) | | | | | | 1,749.13 |
| **VERITO INVESTMENT CORP. NO. 23** | | | | | | |
| *Short-term capital gains* | | | | | | |
| National Tea Co | Oct. 17, 1960 | Mar. 20, 1961 | 300 | 4,912.50 | 5,684.66 | 772.16 |
| | | Mar. 27, 1961 | 200 | 3,275.00 | 3,924.64 | 649.64 |
| | | Mar. 29, 1961 | 800 | 13,100.00 | 15,967.48 | 2,867.48 |
| | | Mar. 30, 1961 | 200 | 3,275.00 | 3,985.66 | 710.66 |
| G.M.A.C | Dec. 2, 1960 | Apr. 12, 1961 | 3,000 | 3,032.42 | 3,001.41 | (31.01) |
| Square D Co | Jan. 20, 1961 | Feb. 21, 1961 | 100 | 3,084.40 | 3,134.62 | 50.22 |
| | Feb. 2, 1961 | ___do___ | 100 | 3,159.78 | 3,209.40 | 49.62 |
| Commercial Solvents | Feb. 27, 1961 | Apr. 22, 1961 | 100 | 2,632.00 | 2,898.59 | 266.59 |
| Metro-Goldwyn-Mayer | Mar. 20, 1961 | Apr. 20, 1961 | 200 | 11,965.13 | 12,520.82 | 555.69 |
| Ennis Business Forms | Mar. 31, 1961 | May 10, 1961 | 100 | 2,575.00 | 2,923.84 | 348.84 |
| Johns-Manville | Nov. 26, 1961 | Mar. 20, 1961 | 200 | 12,340.41 | 13,432.28 | 1,091.87 |
| Net gain (loss) | | | | | | 7,331.76 |
| **VERITO INVESTMENT CORP. NO. 24** | | | | | | |
| *Short-term capital gains* | | | | | | |
| National Tea Co | Oct. 17, 1960 | Feb. 11, 1961 | 1,200 | 19,650.00 | 20,722.75 | 1,072.75 |
| | | Feb. 19, 1961 | 300 | 4,912.50 | 5,016.70 | 104.20 |
| Spiegel, Inc | Feb. 3, 1961 | Apr. 12, 1961 | 200 | 3,032.42 | 3,001.41 | (31.01) |
| Singer Manufacturing Co | Feb. 14, 1961 | Feb. 21, 1961 | 300 | 9,987.76 | 9,974.42 | (13.34) |
| National Presto Industries | Feb. 23, 1961 | Apr. 22, 1961 | 100 | 21,438.45 | 24,585.87 | 3,147.42 |
| Atlantic Refining Co | Feb. 25, 1961 | ___do___ | 200 | 2,039.88 | 2,575.09 | 535.21 |
| Helene Curtis | Feb. 23, 1961 | Mar. 23, 1961 | 200 | 10,163.08 | 10,548.88 | 385.80 |
| Ennis Business Forms | Apr. 12, 1961 | Apr. 22, 1961 | 100 | 9,350.00 | 10,099.51 | 749.51 |
| Bell & Howell | Apr. 27, 1961 | May 10, 1961 | 500 | 2,575.00 | 2,923.84 | 348.84 |
| G.M.A.C | Dec. 2, 1960 | May 26, 1961 | 3,000 | 32,727.50 | 33,262.38 | 534.88 |
| Net gain (loss) | | | | | | 6,834.26 |
| **VERITO INVESTMENT CORP. NO. 25** | | | | | | |
| *Short-term capital gains* | | | | | | |
| S.O.N.J | Jan. 6, 1961 | Feb. 14, 1961 | 200 | 8,505.12 | 9,103.98 | 598.86 |
| Bell & Howell | Feb. 21, 1961 | May 26, 1961 | 100 | 6,070.03 | 6,697.43 | 627.40 |
| Commercial Solvents | Feb. 17, 1961 | Apr. 22, 1961 | 100 | 2,632.00 | 2,886.15 | 254.15 |
| Net gain (loss) | | | | | | 1,480.41 |
| **VERITO INVESTMENT CORP. NO. 27** | | | | | | |
| *Short-term capital gains* | | | | | | |
| Spiegel, Inc | Jan. 3, 1961 | Feb. 18, 1961 | 200 | 8,781.76 | 9,949.48 | 1,167.72 |
| National Presto Industries | Feb. 22, 1961 | Apr. 22, 1961 | 100 | 2,039.88 | 2,575.09 | 535.21 |
| Hammond Organ Inc | Mar. 11, 1961 | ___do___ | 200 | 6,600.00 | 6,468.50 | (131.50) |
| Metro-Goldwyn-Mayer | Mar. 25, 1961 | Apr. 20, 1961 | 100 | 5,982.69 | 6,272.77 | 290.08 |
| Net gain (loss) | | | | | | 1,861.51 |
| **VERITO INVESTMENT CORP. NO. 28** | | | | | | |
| *Short-term capital gains* | | | | | | |
| Crowell-Collier Publishing | Jan. 13, 1961 | Feb. 21, 1961 | 200 | 8,530.50 | 8,830.38 | 299.88 |
| Spiegel, Inc | Feb. 21, 1961 | Apr. 14, 1961 | 100 | 4,984.45 | 6,222.82 | 1,238.37 |
| | | May 26, 1961 | 5 | 260.00 | 244.85 | (15.15) |
| Net gain (loss) | | | | | | 1,523.10 |

| | Date purchased | Date sold | Number of shares | Cost | Selling price | Gain (loss) |
|---|---|---|---|---|---|---|
| **VERITO INVESTMENT CORP. No. 29** | | | | | | |
| *Short-term capital gains* | | | | | | |
| National Tea Co | Oct. 17, 1960 | Mar. 3, 1961 | 600 | $9, 825. 00 | $11, 072. 78 | $1, 247. 78 |
| | | Mar. 17, 1961 | 400 | 6, 550. 00 | 7, 283. 09 | 733. 09 |
| Jones & Laughlin Steel | Dec. 27, 1960 | Feb. 22, 1961 | 300 | 16, 671. 18 | 18, 669. 11 | 1, 997. 93 |
| | Feb. 27, 1961 | Apr. 22, 1961 | 300 | 19, 448. 82 | 20, 316. 90 | 868. 08 |
| Warner & Swasey | Feb. 14, 1961 | Feb. 17, 1961 | 300 | 9, 262. 50 | 8, 996. 40 | (266. 10) |
| Commercial Solvents | Feb. 27, 1961 | Apr. 22, 1961 | 300 | 7, 896. 00 | 8, 658. 41 | 762. 41 |
| Universal Motor | Mar. 11, 1961 | Apr. 18, 1961 | 300 | 17, 909. 79 | 17, 246. 28 | (663. 51) |
| Net gain (loss) | | | | | | 4, 679. 68 |
| **VERITO INVESTMENT CORP. No. 36** | | | | | | |
| *Short-term capital gains* | | | | | | |
| International Harvester Co | Jan. 4, 1961 | Feb. 18, 1961 | 200 | 8, 656. 03 | 9, 534. 61 | 878. 58 |
| Spiegel, Inc | Feb. 21, 1961 | Apr. 14, 1961 | 100 | 4, 984. 45 | 6, 222. 82 | 1, 238. 37 |
| | | Apr. 25, 1961 | 5 | 260. 00 | 244. 85 | (15. 15) |
| Metro-Goldwyn-Mayer | Feb. 25, 1961 | Apr. 20, 1961 | 50 | 2, 504. 63 | 3, 119. 87 | 615. 24 |
| Net gain (loss) | | | | | | 2, 717. 04 |
| **VERITO INVESTMENT CORP. No. 37** | | | | | | |
| *Short-term capital gains* | | | | | | |
| Spiegel, Inc | Jan. 3, 1961 | Feb. 28, 1961 | 100 | 4, 390. 75 | 4, 978. 61 | 587. 86 |
| International Harvester | Jan. 4, 1961 | ___do___ | 100 | 4, 327. 94 | 4, 763. 17 | 435. 23 |
| National Presto | Feb. 23, 1961 | Apr. 22, 1961 | 100 | 2, 039. 88 | 2, 575. 09 | 535. 21 |
| Net gain (loss) | | | | | | 1, 558. 30 |
| **VERITO INVESTMENT CORP. No. 38** | | | | | | |
| *Short-term capital gains* | | | | | | |
| Bell & Howell | Dec. 24, 1960 | Feb. 18, 1961 | 100 | 5, 382. 09 | 5, 873. 34 | 491. 25 |
| Sperry Rand | ___do___ | ___do___ | 100 | 2, 233. 75 | 2, 305. 90 | 72. 15 |
| | | May 26, 1961 | 2 | 46. 00 | 60. 33 | 14. 33 |
| Spiegel, Inc | Feb. 21, 1961 | Apr. 14, 1961 | 100 | 4, 984. 45 | 6, 222. 82 | 1, 238. 37 |
| | | May 26, 1961 | 5 | 260. 00 | 244. 85 | (15. 15) |
| Net gain (loss) | | | | | | 1, 800. 95 |
| **VERITO INVESTMENT CORP. No. 39** | | | | | | |
| *Short-term capital gains* | | | | | | |
| S.O.N.J | Jan. 6, 1961 | Feb. 18, 1961 | 100 | 4, 252. 71 | 4, 551. 91 | 299. 20 |
| Hammond Organ | Mar. 11, 1961 | Apr. 22, 1961 | 100 | 3, 300. 00 | 3, 259. 11 | (40. 89) |
| Net gain (loss) | | | | | | 258. 31 |
| **VERITO INVESTMENT CORP. No. 40** | | | | | | |
| *Short-term capital gains* | | | | | | |
| Bell & Howell | Dec. 21, 1960 | Feb. 18, 1961 | 100 | 5, 382. 09 | 5, 985. 21 | 603. 12 |
| National Presto Ind | Feb. 23, 1961 | Apr. 22, 1961 | 100 | 1, 976. 75 | 2, 612. 40 | 635. 65 |
| Net gain (loss) | | | | | | 1, 238. 77 |
| **VERITO INVESTMENT CORP. No. 41** | | | | | | |
| *Short-term capital gains* | | | | | | |
| Sperry Rand | Dec. 24, 1960 | Feb. 18, 1961 | 100 | 2, 233. 75 | 2, 305. 90 | 72. 15 |
| | | May 26, 1961 | 2 | 46. 00 | 60. 33 | 14. 33 |
| National Presto Industries | Feb. 23, 1961 | Apr. 22, 1961 | 100 | 1, 976. 75 | 2, 612. 40 | 635. 65 |
| Net gain (loss) | | | | | | 722. 13 |

| | Date purchased | Date sold | Number of shares | Cost | Selling price | Gain (loss) |
|---|---|---|---|---|---|---|
| **VERITO INVESTMENT CORP. NO. 42** | | | | | | |
| *Short-term capital gains* | | | | | | |
| Sperry Rand | Dec. 24, 1960 | Feb. 18, 1961 | 100 | $2, 233. 75 | $2, 305. 90 | $72. 15 |
| | | May 26, 1961 | 2 | 46. 00 | 60. 33 | 14. 33 |
| National Presto Industries | Feb. 23, 1961 | Apr. 15, 1961 | 100 | 1, 951. 50 | 2, 572. 65 | 621. 15 |
| Net gain (loss) | | | | | | 707. 63 |
| **VERITO INVESTMENT CORP. NO. 43** | | | | | | |
| *Short-term capital gains* | | | | | | |
| Sperry Rand | Dec. 24, 1960 | Feb. 18, 1961 | 100 | 2, 279. 75 | 2, 305. 90 | 72. 15 |
| | | May 26, 1961 | 2 | 46. 00 | 60. 33 | 14. 33 |
| National Presto Industries | Feb. 23, 1961 | Apr. 15, 1961 | 100 | 1, 905. 50 | 2, 562. 65 | 611. 15 |
| Net gain (loss) | | | | | | 697. 63 |

The stock purchases and sales were made in the respective corporate name of each corporation.

Final liquidation of the transferor corporations was completed on May 31, 1961, and distributions of the assets were made to the stockholders according to their respective stock interests on that date. On June 22, 1961, notices of final dissolution were filed with the secretary of state of the State of Wisconsin and duly recorded in the Milwaukee, Wis., Register of Deeds office, as required by law.

On the respective income tax returns of the transferor corporations for the period ended June 1961 none of the above-mentioned gains from the sale of stock were recognized. On their respective 1961 income tax returns, Frank and William reported all liquidating distributions as long-term capital gains.

Distributions were not made immediately after the sale of the operating assets because the schedule of the transferor corporations' certified public accountant, Arthur L. Birkholz, and his staff was such that they could not physically close the books and determine the apportionment at an earlier date. The corporations had been on an August 31 fiscal year. Hence, immediately following the sale on October 17, 1960, the accountants were required to close the books and prepare the August 31, 1960, income tax returns for filing by November 15, 1960. Upon completion, deferred work of other clients had to be attended to until the end of the calendar year. Next followed income tax season until April 15, 1961, and as soon thereafter as possible the transferor corporations' accountants verified the transactions that had taken place subsequent to August 31, 1960, closed the books on May 31, 1961, and prepared the necessary distribution schedules.

The respondent, determining that the gain was realized by, and taxable to the transferor corporations, asserted a tax deficiency in the aggregate amount of $22,296.54. Since the transferor corporations

liquidated on May 31, 1961, and were left without sufficient assets to pay any deficiency in ,income taxes and since the petitioners received distributions from the transferor corporations without full, fair, and adequate consideration in excess of the asserted deficiencies, respondent has determined that petitioners are liable as transferees of the assets of the transferor corporations.

Petitioners' argument is stated very simply and to the point. They admit they are transferees and therefore are liable for any income tax attributable to the dissolved transferor corporations. However, they maintain that the transferor corporations do not owe any tax. They argue that the 19 transferor corporations adopted plans for liquidation prior to the sale of their assets and within the 12-month period immediately following the adoption of said plan the corporations were in fact liquidated and all assets distributed in complete liquidation and that, accordingly, the provisions of section 337 apply so that no gain is recognized by the corporations on the sale of their property within the 12-month period.

Respondent, on the other hand, contends that although the transactions here involved may fall within the literal reading of section 337 they do not fall within the spirit of the section. He argues that gains on sales of short-term investments made after the "liquidating sale" do not fall within the protection of section 337. The respondent also maintains that the shares of stock which were bought and sold were not "property," as that term is defined in section 337(b)(1)(A).

We agree with petitioners.

The facts in these two consolidated cases are very simple and not in dispute. Petitioners were the principal stockholders and officers of a group of 45 corporations engaged in the retail bakery business in Milwaukee, Wis. At special meetings of the stockholders held in September 1960, resolutions were adopted to sell the assets of the corporations and to liquidate. Less than a month later an offer to sell all the assets of all the corporations, including the corporate name, was made to National Food Stores, Inc. This offer was accepted and in October 1960 the assets were transferred to National Food Stores, Inc., in return for some shares of stock and cash. Nineteen of the 45 selling corporations, being in a highly liquid state, decided to make short-term investments in certain listed stocks. The 19 corporations made investments which resulted in a short-term capital gain of $64,071.77. In addition, the National Tea Co. stock received by one of the transferor corporations as part of the proceeds of the "liquidating sale" was sold for a realized long-term capital gain of $13,354.61. In May 1961 the transferor corporations liquidated and distributed all their assets, in complete liquidation, to their stockholders. The issue presented here is whether, on these facts, the gains realized by the 19 transferor corporations on the sales of stocks

should go unrecognized by virtue of section 337. We think that it should. We have not been able to find, nor have we been referred to, any judicial decisions in point. There is, however, authority in the legislative history of section 337 as well as in the section itself to support our holding.

The material parts of section 337 provide as follows:

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

(b) PROPERTY DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a), the term "property" does not include—

(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,

Since the transferor corporations did adopt a plan of complete liquidation after June 22, 1954 (the date specified in the statute), and since they did distribute all their assets in complete liquidation and did in fact liquidate within the 12-month period beginning on the date of the adoption of such plan, then no gain should be recognized by them on the sale of their property within such period. Respondent does not seek to tax the transferor corporations on any gain realized on the sale by them of their operating assets to National Food Stores, Inc. Respondent refers to that sale as the "liquidating sale." At least as to that sale, respondent concedes that section 337 precludes the recognition of any gain to the transferor corporations. Respondent seeks to tax the transferor corporations only on the gain realized on the sale of certain stocks, which sales took place after the "liquidating sale." As to these sales, it appears that the transferor corporations would also be protected by section 337 unless the stock sold was not "property" as that term is defined in section 337(b)(1)(A)[5] or unless the sales in question are not within the intendment of the section.

Section 337 originated in the Internal Revenue Code of 1954. Prior to that time, a corporation wishing to liquidate would do so in one of two ways. It could sell its assets, report any gain or loss recognized on the sale, and then distribute the proceeds from the sale to its stockholders. In the alternative, the corporation could distribute the assets in kind to its stockholders and the latter could sell the assets. The

---

[5] This case does not involve the limitations on the use of sec. 337 imposed by subsec. (c) thereof.

advantage of this latter approach was that there would be no gain (or loss) recognized at the corporate level.[6] Since the two ways of approaching liquidations resulted in different tax consequences, numerous cases concerned themselves with the sole question of, Who made the sale? If the sale were made by the corporation, it was taxable on any gain derived therefrom. *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945). If the stockholder made the sale, then the corporation would not be subjected to any tax resulting from gain derived from the sale. *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451 (1950). It was with this background that the present section 337 had its birth.

Present section 337 was introduced originally as section 333 of H.R. 8300, 83d Cong., 2d Sess., Union Calendar No. 498. It provided, in part, as follows:

(a) NONRECOGNITION OF GAIN TO LIQUIDATING CORPORATION.—No gain shall be recognized to a corporation upon a sale of an asset after the adoption of the plan of partial or complete liquidation * * * *if such sale is incident to such liquidation* and the distribution in liquidation of all the assets of the corporation * * * is completed within the taxable year in which such sale occurs or within the succeeding taxable year, except with respect to any sale which is—

(1) a sale in the ordinary course of business, or
(2) a sale of an inventory asset * * *

(b) ATTRIBUTION OF SALE OR EXCHANGE.—The sale or exchange of an asset after such asset has been distributed in partial or complete liquidation to the shareholder shall not be attributed to the corporation. [Emphasis supplied.]

The purpose of the legislation as proposed by the House is explained in the committee report as follows:

Your committee's bill eliminates questions arising as a result of the necessity of determining whether a corporation in process of liquidating made a sale of assets or whether the shareholder receiving the assets made the sale. Compare *Commissioner* v. *Court Holding Company* (324 U.S. 331), with *U.S.* v. *Cumberland Public Service Company* (338 U.S. 451) * * *. In order to eliminate questions resulting only from formalities, your committee has provided that if a corporation in process of liquidation sells assets there will be no tax at the corporate level * * *. [H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 38, 39 (1954).]

The detailed discussion of the technical provisions of the House bill provides this further explanation of the section's purpose:

Accordingly, under present law, the tax consequences arising from sales made in the course of liquidation depend primarily upon the formal manner in which transactions are arranged. The possibility that double taxation may occur in such cases results in causing the problem to be a trap for the unwary.

Your committee intends in section 333 to provide a definitive rule which will eliminate any uncertainty. [H. Rept. No. 1337, *supra* at A106.]

---

[6] The same result could also be reached by the stockholder selling his stock in the corporation. This is really a third way of disposing of one's interest in a corporation.

When section 333 as contained in H. Rept. No. 8300 reached the Senate, it was rewritten and emerged as section 337 of the Code. The Senate Finance Committee report had this to say regarding the change of language:

While the purpose intended to be served by section 337 is similar to that provided in section 333 of the House bill, the language and approach of section 337 differs from that of section 333.

Subsection (a) states the general rule of section 337 to the effect that if a corporation adopts a plan of complete liquidation on or after June 18, 1954 [changed to June 22, 1954] and the corporation, within the 12-month period beginning on the date of the adoption of the plan, disposes of all of the assets of the corporation * * * in complete liquidation then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period. * * * [S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 258, 259 (1954).]

The purpose of section 337 is clear when one reads the committee reports while keeping in mind the chaotic state of the case law as it existed prior to 1954. The purpose of the section was not to eliminate one level of taxation. This could be done without the aid of section 337. *United States* v. *Cumberland Pub. Serv. Co., supra.* The purpose of the section was aimed at eliminating the uncertainties attendant upon the Supreme Court decisions in *Court Holding Co.* and *Cumberland Pub. Serv. Co.* and to make moot the question as to whether a sale of assets was accomplished by the corporation or its stockholders.

We realize that the provisions of section 337 are such that there may still be need to employ the doctrines established by the *Court Holding Co.* and *Cumberland Pub. Serv. Co.* cases. The rules as laid down in the two Supreme Court cases will be utilized at least where (1) the corporation is not in complete liquidation, (2) where the sale was not of "property," and (3) where the other formal requirements of the section have not been met. It is with the aforestated purpose in mind that we approach the issue at hand.

Respondent would have this Court limit the interpretation of section 337 to only the "liquidating sale." Any sale of assets which takes place after the liquidating sale but before liquidation, respondent claims, does not fall within the intendment of section 337. We disagree. Neither the statute nor the legislative history supports respondent's position.[7] The result, urged by respondent, would be

---

[7] An acceptance of respondent's approach would put us back to where we were before sec. 337 came into existence. If the sales here in question are not covered by sec. 337, then whether or not the corporations recognize gain on the sales will depend upon who made the sale. Clearly in this case the corporations sold the stocks and under *Commissioner* v. *Court Holding Co.,* 324 U.S. 331 (1945), the corporations would be taxed on the gain. If instead, however, the corporations had distributed to the stockholders in complete liquidation all the purchased stock, sec. 336 would prevent the corporations from being taxed on the distributions. If the stockholders then sold the stock, the gain on the sale would be taxed to them and not to the corporations. *United States* v. *Cumberland Pub. Serv. Co.,* 338 U.S. 451 (1950).

violating the express wording of section 337 as well as the stated purpose of the section. As we stated previously, the purpose of section 337 was to do away with the necessity of deciding who made the sale as long as the corporation is in a state of complete liquidation and the sale (of property) takes place within a certain period of time. Any result which would cause the question of taxation to once again depend upon who made the sale, where the formal requirements of the section have been met, would be a direct violation of the section.[8] We feel that as long as the sale is not inconsistent nor incompatible with the pending liquidation, that is, as long as the corporation is in fact in the process of complete liquidation, and the sale does not violate any other subsection of section 337, it is covered by section 337 regardless of the fact that it takes place after the permanent operating assets have been sold. It was not inconsistent with the plan of liquidation for the transferor corporations to seek some form of short-term investments while awaiting the actual date of liquidation. When some of these short-term investments were eventually sold, their sales were part of the plan of liquidation.

We agree with respondent when he says that not all sales of property are protected under section 337. However, in those cases where a sale of property has not been afforded protection under section 337 it was because the corporation involved was trying to convert ordinary income into capital gain. See *Central Building & Loan Association*, 34 T.C. 447 (1960); *Family Record Plan, Inc.*, 36 T.C. 305 (1961), affd. 309 F. 2d 208 (C.A. 9, 1962); *Commissioner* v. *Kuckenberg*, 309 F. 2d 202 (C.A. 9, 1962), modifying 35 T.C. 473 (1960), certiorari denied 373 U.S. 909 (1963); *Jeanese, Inc.* v. *United States*, 227 F. Supp. 304 (N.D. Cal. 1964); *West Seattle National Bank of Seattle*, 33 T.C. 341 (1959), affd. 288 F. 2d 47 (C.A. 9, 1961). In *Central Building & Loan Association, supra*, this Court held there was only a collection of interest rather than a "sale or exchange" where part of the proceeds received represented accrued interest on note obligations.[9] In *Family Record Plan, Inc., supra*, we held that accounts receivable of a cash basis taxpayer were installment obligations within the meaning of section 337(b) so that the gain on their sale was fully recognizable. In *West Seattle National Bank of Seattle, supra*, involving the sale of accounts receivable with respect to which reserves for bad debts had been deducted, we held that an amount received equal to the bad debt reserves was ordinary income

---

[8] Respondent's argument that the sales must be incident to the liquidation is without merit. The legislative history of the section precludes this interpretation. As quoted in the body of this opinion, the bill as originally introduced in the House contained language requiring the sales to be "incident to such liquidation." Without any stated reason, this language was dropped from the bill by the Senate and is not contained in present sec. 337.

[9] In the instant proceedings, all dividends received by the transferor corporations from their investments have been reported by them as ordinary income.

and section 337 did not apply because the income sought to be taxed did not arise from the sale of assets. Clearly, it was not the purpose of section 337 to allow the sale of the right to receive income to escape taxation. Respondent contends that to allow the sales here to escape taxation at the corporate level would be tantamount to allowing a corporation to operate tax free during the period of liquidation and to allowing ordinary income to be converted into capital gain. Since the major portion of the gain realized on the sales of the transferor corporations was short-term gain, respondent argues that if section 337 applies the short-term gain would be converted into long-term gain in the hands of the stockholders. Section 337, if applicable to this case, will have the effect of transforming short-term capital gains, taxable at ordinary income rates, into long-term capital gains. However, we do not agree with respondent when he asserts that to allow the sales in question to go tax free at the corporate level would be the same as allowing the corporations to operate tax free during the period of liquidation. Congress saw fit to exclude from the benefit of the section sales in the ordinary course of business during the 12-month period. S. Rept. No. 1622, *supra* at 259; *Hollywood Baseball Association*, 42 T.C. 234, 257 (1964), on appeal (C.A. 9, Aug. 31 and Oct. 1, 1964). This result was accomplished by granting nonrecognition to the sale of "property" and then defining "property" so as not to include "stock in trade," "inventory," and "property held * * * primarily for sale to customers in the ordinary course of its * * * business." Sec. 337(b)(1)(A). See also *Jeanese, Inc.* v. *United States, supra.* The respondent recognizes, as he must, that the term "property" includes all assets owned by the corporation except for those enumerated in section 337(b)(1)(A). See sec. 1.337–3, Income Tax Regs.; Rev. Rul. 59–120, 1959–1 C.B. 74. This exclusion of inventory-type assets is similar in wording and purpose to section 1221 (1)[10] which excludes certain assets from capital gains treatment. See *Hollywood Baseball Association, supra* at 258. Therefore, any judicial interpretation regarding section 1221(1) is clearly applicable to an understanding of section 337(b)(1)(A). *Jeanese, Inc.* v. *United States, supra* at 309. Accordingly, if the stock in question here would be considered a capital asset in the hands of the transferor corporations without thwarting section 1221(1), then the stock should be considered "property" without thwarting section 337(b)(1)(A).

Whether the sales involved herein were of property which would be considered stock in trade, inventory, or property held primarily

[10] SEC. 1221. CAPITAL ASSET DEFINED.

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business ;

for sale to customers in the ordinary course of business is a question of fact which must be determined upon all the evidence of record. *Hollywood Baseball Association, supra; Stern Brothers & Co.*, 16 T.C. 295, 313 (1951). Based upon the record before us, the securities could not be classified as "stock in trade" or "other property of a kind which would properly be included in the inventory" by the transferor corporations. *Harry M. Adnee*, 41 T.C. 40, 43 (1963). The transferor corporations were in the bakery business. After the operating assets were sold to National Food Stores, Inc., a decision was made by the corporations to invest their liquid assets in securities. An investment of this nature by itself is not sufficient evidence to find that the transferor corporations were in the business of selling securities. *Whipple* v. *Commissioner*, 373 U.S. 193, 202 (1963); *Acro Manufacturing Co.*, 39 T.C. 377, 384 (1962), affd. 334 F. 2d 40 (C.A. 6, 1964). Clearly, the transferor corporations were not "dealers" in securities. They had no customers, and, therefore, could not hold securities primarily for sale to customers; they merely invested in securities for a short period of time for their own benefit. *Schafer* v. *Helvering*, 299 U.S. 171 (1936); *Harry M. Adnee, supra; Acro Manufacturing Co., supra; George R. Kemon*, 16 T.C. 1026, 1032 (1951); *Frank B. Polachek*, 22 T.C. 858, 862 (1954). Furthermore, even if the transferor corporations could be considered to have entered the business of selling securities, at best they would be considered as "traders" as contrasted to "dealers" in securities. *George R. Kemon, supra; Frank B. Polachek, supra.*[11] Therefore, the securities in the hands of the transferor corporations would be capital assets under section 1221.

Based upon the foregoing, we find and so hold that the stock in question was "property" under section 337(b) and that the exception contained in section 337(b)(1)(A) does not apply. Having found that the sales here involved were of "property," we are of the opinion that section 337 does apply in this case. The statute is clear and unambiguous. While there is nothing to indicate that Congress was aware of the fact situation of this case, *Henry McK. Haserot*, 41 T.C. 562, 570 (1964), we do not find anything in the legislative history which compels us to adopt respondent's approach. Cf. *Commissioner*

---

[11] Moreover, respondent's argument on this issue is inconsistent with his own determination regarding the transferor corporations. Respondent has determined that the gain realized on the completed transactions involving the sales of stock should be taxed to the corporations without affording the latter the benefit of sec. 337. However, respondent, in making this determination, has treated the transactions as sales of capital assets and computed the tax deficiencies accordingly. Yet, respondent argues that the reason sec. 337 does not apply herein is because the stock sold was not property in that it was stock in trade, inventory, or property held primarily for sale to customers in the ordinary course of business. If this were true, as respondent contends, the assets sold would not be capital assets and the gains resulting therefrom would be treated as ordinary income to the corporations. We are not given any explanation for this apparent inconsistency in respondent's position.

v. *Bilder*, 369 U.S. 499, 504 (1962). The transferor corporations, after complying fully with the terms and requirements of section 337 as regards the "liquidating sale," found themselves in a situation which did not permit immediate liquidation and distribution of their assets. Short-term investments were made during the interim period.

Respondent states on brief that "Here we are faced with the deliberate manipulation of sales in order to take advantage of the literal provisions of Section 337 without adopting their intent. Such machinations are undoubtedly a perversion of the law." The facts do not support this statement. After the "liquidating sale," the transferor corporations could not make final distributions because of the fact that their accountants were busy with other matters. Accordingly, during the interim period the corporations, through their officers, made investments and put their cash to work. We do not see any deliberate manipulation, nor do we see a perversion of the law. At most, the transferor corporations took advantage of a benefit specifically provided for by the Code. Cf. *Henry C. Beck Builders, Inc.*, 41 T.C. 616, 628 (1964). They complied with the literal and unambiguous provisions of section 337 and are entitled to their benefit. We do not see this case as a method of tax avoidance in view of the safety valve contained in section 337(b). However, if there be one, it is for Congress to correct. *Fabreeka Products Co.* v. *Commissioner*, 294 F. 2d 876 (C.A. 1, 1961). We were not given the responsibility of writing statutes, but we do have the responsibility of interpreting them as we find them. *Mary E. Burrow Trust*, 39 T.C. 1080 (1963), affd. 333 F. 2d 66 (C.A. 10, 1964); *Hanover Bank* v. *Commissioner*, 369 U.S. 672, 688 (1962).

We hold that the sales in question fall within the protective provisions of section 337 and that the gain realized on said sales of stock should go unrecognized at the corporate level.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

HOYT, J., concurs in the result.