*Decision will be entered for the respondent.*

JACK A. MELE AND ERLENE W. MELE, TRANSFEREES, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3888-69, 3889-69, 3914-69. Filed December 19, 1973.

*Richard B. Dodge*, for the petitioners.
*Jonathan A. Brod*, for the respondent.

OPINION

SCOTT, *Judge:* Respondent determined deficiencies in Federal income taxes of Chapman Enterprises, Inc., for the period January 1, 1966, through July 12, 1966, in the amount of $161,013.38 and determined a liability as transferees against Jack A. Mele and Erlene W. Mele for this income tax of Chapman Enterprises, Inc., in the amount of $36,683. Respondent also determined a deficiency in the Federal income tax of Jack A. Mele and Erlene W. Mele for the calendar year 1966 in the amount of $973.57. In his answer to an amendment to petition filed by Jack A. and Erlene W. Mele, respondent claimed an increased deficiency, bringing the total deficiency involved for the calendar year 1966 of the Meles to $2,265.70.

---

[1] Cases of the following petitioners are consolidated herewith: Chapman Enterprises, Inc., docket No. 3889-69, and Jack A. Mele and Erlene Mele, docket No. 3914-69.

The issue for decision is whether Chapman Enterprises, Inc., an accrual basis taxpayer, must recognize as taxable income in its final taxable period all or any part of the amount of $333,027.50 [2] received by it as prepaid interest on a note given to it in partial payment of the sales price of its property during the 12-month period following its adoption of a plan of complete liquidation under section 337, I.R.C. 1954,[3] and in the alternative whether the shareholders of Chapman Enterprises, Inc., must report as ordinary income any of the amount received by Chapman Enterprises, Inc., as prepaid interest following the adoption of the plan of complete liquidation.

All of the facts have been stipulated and are found accordingly.

Chapman Enterprises, Inc. (Chapman), was incorporated under the laws of the State of California on March 2, 1962. Its principal offices at the time of the filing of its petition in this case were in Whittier, Calif. Chapman, an accrual basis taxpayer, filed its final Federal income tax return for the period January 1, 1966, to July 12, 1966, with the district director of internal revenue, Los Angeles, Calif.

Jack A. Mele and Erlene W. Mele, husband and wife, are transferees of Chapman. At the time they filed their petitions in this case their residence was in Whittier, Calif. They filed their Federal income tax return for the calendar year 1966 with the district director of internal revenue, Los Angeles, Calif.

The articles of incorporation of Chapman provided for an authorized capital stock of 50,000 shares of no-par-value common stock. Chapman was formed as a corporation for the purpose of receiving the assets, subject to liabilities, from its predecessor, Chapman Enterprises, a limited partnership. The limited partnership transferred its assets, subject to liabilities, to Chapman solely in exchange for the common capital stock of Chapman and immediately after the exchange the partners in the limited partnership owned all of the outstanding shares of Chapman.

On July 14, 1965, at a special meeting of the shareholders of Chapman, a resolution was adopted that Chapman be dissolved. A plan of complete liquidation was adopted by Chapman's board of directors on July 14, 1965, and on that same date a Certificate of Election to Wind Up and Dissolve was executed and filed by Chapman with the office of the secretary of state of the State of California.

On May 13, 1966, Chapman sold a substantial part of its real property (the Eastgate Plaza Shopping Center) and related personal property to Eastgate Plaza, Ltd., a limited partnership, for a sales price of $2,875,000, which was paid as follows:

---

[2] The stipulated amount of the cash tendered to Chapman was $333,027.50. The promissory note shows the sum to be $333,027.53.

[3] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

| | |
|---|---:|
| Cash downpayment | $50,000.00 |
| Previously existing indebtedness secured by trust deeds (2) assumed | 1,873,492.76 |
| Purchase money note, secured by a second trust deed | 951,507.24 |
| Total | 2,875,000.00 |

The purchase-money note which was secured by a second-trust deed ($951,507.24) was made payable to Chapman and provided for payment of the principal and interest at the rate of 7 percent per annum as follows:

1. The undersigned has, concurrently with the execution hereof, paid to the payee the sum of *$333,027.53* in payment of the interest hereon for the period beginning on *June 1, 1966 and ending on May 31, 1971.*

2. On or before July 31, 1967 and on the same date of each and every year thereafter to and including July 31, 1971, the undersigned shall pay the following amounts to the holder of this note, which amounts shall be applied in payment of principal:

(a) All "Net Spendable Income" (as said term is defined in Paragraph 6 hereof), if any, in excess of $40,000.00 which is derived from the property which is described in the deed of trust securing this note (herein called the "Property") during the twelve month period beginning on June 1st of the previous year and ending on May 31st of the current year (which period is herein called a "fiscal year"); provided, however, that the undersigned shall not be required to pay the holder of this note more than $25,000.00 per calendar year under this subparagraph (a).

(b) One-half of all Net Spendable Income, if any, in excess of $65,000.00 which is derived from the Property during the fiscal year ending on May 31st of the current year.

3. On or before July 31, 1972 and on the same date of each and every year thereafter to and including July 31, 1978, the undersigned shall pay the following amounts to the holder of this note:

(a) All interest which was earned upon this note during the fiscal year ending on May 31st of the current year and which then remains unpaid. *If any principal payments are made hereunder prior to May 31, 1971, the interest which is prepaid under Paragraph 1 hereof and is not earned during said five year period shall be applied in payment of the interest which is earned during the sixth and succeeding years until said prepaid interest has been fully earned, and any amount so applied shall reduce the amounts payable under this subparagraph (a).*

(b) An amount equal to (i) one-half of the Net Spendable Income, if any, which is derived from the Property during the fiscal year ending on May 31st of the current year, minus (ii) all interest paid under subparagraph (a) of this Paragraph 3. The amounts paid under this subparagraph (b) shall be applied in payment of principal.

\* \* \* \* \* \* \*

5. The payments hereinabove mentioned shall continue only until this note has been paid in full and no amounts whatsoever shall thereafter be payable to the holder of this note. In the event that any principal or interest remains unpaid on November 30, 1978, the entire balance shall become immediately due and payable, irrespective of the Net Spendable Income, if any, which has theretofore been derived from the Property.

The contract of sale between Chapman and Eastgate Plaza, Ltd., is an entire contract, no part of which may be severed from the whole. All of the terms and provisions were negotiated on an integrated and

entire basis. All of the essential provisions and elements of the sale by way of illustration and not limitation, such as price, term of payment, interest rate, method of payment of interest rate, rental income of the property sold, descriptions of the property sold, and assumption agreements, were interrelated and interdependent and no part of any element of the sale and purchase could or can be severed from the escrow and treated as a separate transaction. The amount of $333,027.50 was paid to Chapman in accordance with paragraph 1 of the note. This amount is the product of simple interest on the purchase-money note of $951,507.24, at the rate of 7 percent per year, for the first 5 years of the note (from June 1, 1966, to May 31, 1971). Interest on $951,507.24 at 7 percent for 41 days (from June 1, 1966, to July 12, 1966) is $7,646.

Pursuant to the plan of complete liquidation all the assets of Chapman, subject to the liabilities, were fully distributed to Chapman Eastgate, a general partnership, on July 12, 1966.

Each shareholder in Chapman became a general partner in Chapman Eastgate with the same percentage of ownership as his stock ownership in Chapman.

The distributed assets included the following:

| | | |
|---|---|---|
| (a) | A parcel of land near the Eastgate Plaza Shopping Center at a fair market value of_____ | $662,000.00 |
| (b) | The purchase-money note secured by a second-trust deed at the fair market value of_____ | 951,507.24 |
| (c) | Net cash in excess of liabilities_____ | 208,049.00 |
| | | 1,821,556.24 |

A Certificate of Winding Up and Dissolution was prepared and executed on July 20, 1966, and was filed by Chapman in the California secretary of state's office on August 4, 1966.

Chapman complied with all statutory requirements to effect a complete liquidation within the provisions of section 337.

Neither the land, buildings, and applicable personal property included in the sale of Eastgate Plaza Shopping Center nor the parcel of land near the shopping center which was distributed to the shareholders was: (a) stock in trade of the corporation; or (b) property of a kind which would be included in the inventory of the corporation if on hand at closing of the taxable year; or (c) property held by the corporation primarily for sale to customers in the ordinary course of the seller's trade or business. Further, there were no installment obligations as described in section 337(b)(1) (B) and (C) sold or distributed by Chapman during the period involved herein.

Chapman was not a collapsible corporation as defined in section 341(b).

The shareholders of Chapman, including petitioners Jack A. Mele and Erlene W. Mele, reported as ordinary income for their taxable

year 1966 their stock ownership percentage of the prepaid interest received by Chapman.

Respondent in his notice of deficiency to Chapman determined that the prepaid interest received by Chapman on May 20, 1966, constitutes ordinary income of Chapman and was not the proceeds from the sale or exchange of property within the provisions of section 337.

Respondent in his notice of deficiency to Jack A. and Erlene W. Mele determined that they improperly reported their proportionate part of the prepaid interest received by Chapman as ordinary income but should have included this amount as part of the assets distributed to them by Chapman in computing their capital gain on their Chapman stock resulting from the distribution.

In their original petition, the Meles alleged that respondent erred in considering their proportionate distribution of Chapman's prepaid interest as being a part of their distribution from Chapman in computing their capital gain, but in an amendment to petition they deleted their allegation that respondent erroneously determined that they improperly reported on their Federal income tax return for 1966 as ordinary income the amount representing their share of the prepaid interest and further alleged that the amount constitutes long-term capital gain as determined by respondent.

Respondent's answer to the amendment to petition of Jack A. and Erlene W. Mele concedes that if this Court decides that Chapman realized interest income on the receipt of the 5 years' prepaid interest, then the Meles are entitled to report their share of the interest which was distributed to them in complete liquidation of Chapman as capital gain. In the alternative, respondent alleged that if this Court decides that Chapman did not receive interest income on the receipt of the 5 years' prepaid interest, then the Meles properly reported their share of this interest which they received in a liquidation distribution as ordinary income.

Section 337(a) provides for the nonrecognition of gain from the sale of a corporation's "property" if that sale occurs within a 12-month period following the adoption by the corporation of a plan of complete liquidation and within that same 12-month period all of the assets of the corporation less assets retained to meet claims are distributed in complete liquidation.[4]

---

[4] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

For purposes of section 337(a), "property" excludes the corporation's inventory, installment obligations acquired from the sale or exchange of inventory, and installment obligations acquired from the sale or exchange before the adoption of the plan of complete liquidation of other property.[5]

The parties have stipulated that the procedural requirements of section 337 were fully complied with by Chapman and that the property sold by Chapman to Eastgate Plaza, Ltd., did not constitute any of the classes of property specifically excluded from gain nonrecognition under section 337(b).

Both parties also recognize that if Chapman had not sold the shopping center but had distributed it in kind to its shareholders in complete liquidation, each shareholder would have recognized gain or loss to the extent that the fair market value of his interest in the shopping center and other distributed property exceeded or was less than his adjusted basis in his shares. Sec. 331(a). The property would have had, in the hands of the shareholders to whom it was distributed, a basis equal to its fair market value at the time of the distribution. Sec. 334(a). Consequently, a sale by the shareholders of the property distributed to them in liquidation should give rise to little or no gain if the sale occurs immediately after the distribution or shortly thereafter. If a part of the property distributed to the shareholders in complete liquidation of a corporation includes a promissory note payable in periodic installments of principal and interest, as the installment payments are received, a portion is allocable by the shareholder to principal and a portion to interest. There is no question that each shareholder would have to report as ordinary income that portion of the periodic payment which represented interest on the promissory note.

---

[5] Sec. 337(b), I.R.C. 1954:

(b) PROPERTY DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a), the term "property" does not include—

(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,

(B) installment obligations acquired in respect of the sale or exchange (without regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a)) of stock in trade or other property described in subparagraph (A) of this paragraph, and

(C) installment obligations acquired in respect of property (other than property described in subparagraph (A)) sold or exchanged before the date of the adoption of such plan of liquidation.

(2) NONRECOGNITION WITH RESPECT TO INVENTORY IN CERTAIN CASES.—Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term "property" includes—

(A) such property so sold or exchanged, and

(B) installment obligations acquired in respect of such sale or exchange.

Respondent asserts that since the shareholders of Chapman would have been required to include in their ordinary income the interest received from the purchaser of the shopping center had interest on the note distributed to them been paid after the distribution, surely Chapman is required to include in its income the interest it receives, even though the gain from the sale of the shopping center is not recognized by Chapman under the provisions of section 337.

Petitioners assert that the 5 years' prepaid interest received by Chapman was an integral part of the sales transaction. They in effect argue that this interest was a part of the proceeds of the sale of Eastgate Plaza and, by the clear language of section 337, need not be recognized.

In our view, a finding that the receipt of the prepaid interest was an integrated part of the sales transaction does not cause amounts received as interest to be considered as an "amount realized" from the sale or exchange of property as contemplated by section 1001(b). Section 337 excludes from recognition the gain or loss of a liquidating corporation from the sale or exchange of its property. In our view, interest received because of accepting a note in partial payment for property is not "gain or loss" from the sale of that property. Such interest is a payment received for the extension of credit. Gain or loss from the sale or exchange of property, defined by section 1001(a), depends upon the "amount realized" as defined by section 1001(b).[6] Petitioners do not contend that any part of the prepaid interest Chapman received was anything other than interest and in fact the record is clear that it was interest. In our view, the prepaid interest received by Chapman was not part of the "amount realized" by Chapman in terms of section 1001(b) and is not to be added to the money and property received as the purchase price of the shopping center in determining the gain or loss realized by Chapman from the sale of the shopping center. Even though the interest paid or payable on a promissory note might affect the fair market value of that note, the interest is not part of the amount of the purchase price paid for the property or the "amount realized" on the sale. The

---

[6] SEC. 1001. DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. In determining the amount realized—

(1) there shall not be taken into account any amount received as reimbursement for real property taxes which are treated under section 164(d) as imposed on the purchaser, and

(2) there shall be taken into account amounts representing real property taxes which are treated under section 164(d) as imposed on the taxpayer if such taxes are to be paid by the purchaser.

interest on the note is received because the seller instead of receiving a cash payment of the purchase price extends credit to the purchaser.

Both petitioners and respondent contend that their position is supported by *Frank W. Verito*, 43 T.C. 429 (1965). In that case, the taxpayer was the transferee of 45 corporations, each of which adopted plans of complete liquidation and each of which sold all of its assets to the same purchaser. Nineteen of the 45 corporations, while awaiting the distribution of their assets, made temporary investments in various listed securities. Some of these securities were sold before the assets were distributed, giving rise to both short- and long-term capital gain. We held that the gain from the sale of the securities did not have to be recognized by the distributing corporations because of the provisions of section 337. We stated, at page 440, that "as long as the sale is not inconsistent nor incompatible with the pending liquidation, that is, as long as the corporation is in fact in the process of complete liquidation, and the sale does not violate any other subsection of section 337, it is covered by section 337."

Petitioners contend there is similarity between the short-term capital gains which were free from recognition in *Frank W. Verito* and the interest payment in the case at bar. They overlook the crucial fact that gain, whether capital or otherwise, results from the sale or exchange of property. Interest does not involve a sale or exchange of property; it is paid because of the extension of credit or the lending of money. In *Frank W. Verito, supra*, the corporation realized short-term capital gains which we held not taxable to the corporation even though, because of section 337 and section 331, the amounts of such gains would be taxed to the corporation's shareholders as long-term capital gains. It does not follow that a corporation which has received ordinary income in the form of interest should be held not to be subject to tax on such receipt under section 337 while those funds are taxed at long-term capital gain rates in the hands of the corporate shareholders.

Since we have concluded that Chapman received interest income which it must include as ordinary income in its final tax return, it is necessary for us to decide how much of that interest income it must so include. Chapman was an accrual basis taxpayer. It received $333,027.50 on May 20, 1966, representing 5 years of interest on a note. Forty-one days thereafter Chapman distributed all its assets, including the note, in complete liquidation.

Petitioners contend that if we find that Chapman must report interest income received on the note it accepted as part payment of the sale price of Eastgate Plaza, its interest income should not exceed the amount which would be earned during the 41 days between its receipt of the interest and the distribution of its assets, or $7,646.

Respondent, relying upon section 446(b), contends that the inclusion of the entire amount of the prepaid interest in Chapman's final taxable period is required to clearly reflect Chapman's income for its final taxable period.

Respondent contends that because Chapman actually received the interest and because the funds were at Chapman's unrestricted disposal, Chapman must include the entire amount of the prepaid interest in income in its final taxable period. We agree with respondent. When the interest was paid to Chapman all of the events had occurred that call for accrual and no further inquiry is necessary to determine whether the income had been earned. "Income may accrue prior to receipt, but not subsequent thereto" where the amount received is subject to the unrestricted use of the recipient. *Automobile Club of New York, Inc.*, 32 T. C. 906, 913 (1959), affd. 304 F. 2d 781 (C.A. 2, 1962). Even if Chapman's vendee were to accelerate payment of principal, this would create nothing more than a contingent liability which has no bearing on Chapman's right to the interest when received. *Wallace A. Moritz*, 21 T.C. 622 (1954), quoted with approval in *S. Garber, Inc.*, 51 T.C. 733, 736 (1969).

Although our attention has not been directed to, nor have we found any decision of this Court involving, the date of accrual of prepaid interest, the issue has been decided by the United States Courts of Appeals for the Seventh and the Fourth Circuits. In *Franklin Life Insurance Co.* v. *United States*, 399 F. 2d 757 (C.A. 7, 1968), the taxpayer, a life insurance company employing an accrual method of accounting, made interest-bearing loans to its policyholders. A policyholder would be required to pay the interest on the loan in advance for the period from the date of the loan to the end of the current policy year, that is, the anniversary date of the policy. The taxpayer contended that it was required to report as income only that portion of the interest received that it deemed earned in the taxable year. The Court of Appeals held to the contrary (p. 762):

here the taxpayer receives the interest under a binding agreement with the borrower calling for its receipt and without restriction upon its use by the taxpayer. The money is "earned" in a context sufficient for full tax recognition in that taxpayer, when it receives the interest, is fully entitled to it under the express terms of the policy loan agreement. And taxpayer is free to use or invest the full sum in any way he sees fit. * * *

The court in *Jefferson Standard Life Insurance Co.* v. *United States*, 408 F. 2d 842, 857 (C.A. 4, 1969), followed the holding of the Seventh Circuit in the *Franklin Life Insurance Co.* case.

Petitioners assert that a decision by us that Chapman must include the full amount of prepaid interest in its taxable income for its last taxable period would be to sanction not an exercise of discretion by the Commissioner but an exercise of caprice. A somewhat similar view

was expressed in the dissenting opinion in *Schlude* v. *Commissioner*, 372 U.S. 128 (1963). Nevertheless, under the holding of the majority in the *Schlude* case and the holding of the Supreme Court in other cases, Chapman, an accrual basis taxpayer, must include in its income amounts actually received under the conditions present in this case. *Automobile Club* v. *Commissioner*, 353 U.S. 180 (1957); *American Automobile Assn.* v. *United States*, 367 U.S. 687 (1961); *Schlude* v. *Commissioner, supra.*

In light of our finding that Chapman received taxable income in the amount of $333,027.50 which must be included in its final income tax return, petitioners Jack and Erlene Mele as transferees are liable for the taxes owed by their transferor to the extent of the fair market value of the assets they received in liquidation from Chapman.

Petitioners Jack and Erlene Mele in their individual capacity reported their share of the prepaid interest distributed to them as ordinary income. The cash, including those amounts representing the prepaid interest received by Chapman, plus the fair market value of the other property received by Chapman's shareholders in complete liquidation of Chapman, constitutes an amount received in sale or exchange of the shares of Chapman. Sec. 331. Therefore, Jack and Erlene Mele incorrectly reported their share of the prepaid interest as ordinary income instead of including it as part of the distribution received from Chapman in computing their capital gain on the distribution.

*Decisions will be entered under Rule 50.*