GUYAN OIL CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guyan Oil Co. v. Commissioner
Docket No. 5463-86
United States Tax Court
T.C. Memo 1988-486; 1988 Tax Ct. Memo LEXIS 513; 56 T.C.M. (CCH) 433; T.C.M. (RIA) 88486; October 6, 1988
Mark L. Garren, for the petitioner. D. Lyndell Pickett, Jack M. Panitch, and James B. Martin, for the respondent. HAMBLEN
MEMORANDUM OPINION HAMBLEN, Judge: This case is before us on petitioner's motion for litigation costs pursuant to Rule 231 [1] and section 7430. *515 At trial, petitioner and respondent were ordered to file simultaneously their opening briefs on January 4, 1988. Reply briefs were to be filed 45 days later on February 18, 1988. By motion filed January 4, 1988, and granted January 5, 1988, respondent requested an extension of time for filing opening briefs to January 18, 1988. On January 20, 1988, respondent conceded his case. As of the concession date, neither party had filed an opening brief. Pursuant to Rule 231(c), taxpayers submitted a Stipulation as to Settled Issues which stipulation noted that the parties had settled all issues in the case other than that relating to petitioner's claim for litigation costs. We have come to understand the theory and circumstances in this case based upon stipulated facts and accompanying exhibits, which are incorporated into our opinion by this reference; the transcript of the trial in this case; petitioner's motion in support of its receiving litigation costs; petitioner's affidavit; and respondent's written response to petitioner's motion and affidavit. In a notice of deficiency dated December 4, 1985, respondent determined a deficiency in petitioner's corporate Federal income taxes *516 equal to $ 153,170.51 for petitioner's taxable year ended April 30, 1983, the taxable year of petitioner's corporate liquidation. In arriving at this deficiency determination, respondent increased petitioner's taxable income by $ 431,321. As an explanation for this increase, respondent stated: It is determined that the proceeds of the transaction identified in your return as a sale of "Griffithville Oil Field" constitute ordinary income to the extent of $ 431,321.00 because this transaction did not constitute a sale or exchange subject to the nonrecognition provisions of Section 337 [2] of the Internal Revenue Code. Accordingly, your taxable income is increased $ 431,321.00. [Footnote reference added.] *517 The circumstances of the $ 431,321 sum are as follows. Petitioner entered into a contract on August 28, 1975, with the U.S. Department of Energy under which the Department provided petitioner approximately one and a half million dollars to finance an oil recovery experiment petitioner planned. An amount slightly in excess of $ 2,200,000 was provided as further financing for the experimental project by a group of investors referenced as the Pikeville Group. Finally, an additional $ 750,000 in financing for the project came from the sale of oil produced while experimental wells were being developed. The project involved the injecting of water and carbon dioxide into oil wells originally drilled in the early 1900's in an attempt to recover more oil from these old wells. The project covered a 2,772-acre parcel in West Virginia assembled through ownership, leases, and farm-out agreements. Ownership of the working interest in the experimental project was divided as follows: 63 percent to the Pikeville Group; 29 percent to petitioner; and 8 percent to four individuals who had contributed their services to the project. Soon after commencement of the experimental project, petitioner *518 ran into environmental problems and was the subject of an environmental suit brought against it. Discouraged by the slow progress of the project and the limitations placed on the project by the court reviewing the environmental claim, petitioner decided to transfer the project to Newmont Oil Company ("Newmont") and Adobe Oil and Gas Corporation ("Adobe") on May 12, 1982. In transferring the project, petitioner represented all holders of a working interest in the project. Under the terms of the project's transfer, the transferors were to receive $ 2,000,000 and a 3-1/2 percent overriding royalty from the sale of all oil produced, saved, and sold from the properties in the project. These received items were to be divided among all transferors based on their approximate ownership interests in the working interest of the experimental project. [3]The Pikeville Group, nevertheless, received an amount of the $ 2,000,000 proceeds in excess of its 63 percent because petitioner and the holders of the remaining 8 percent of the project's ownership interests agreed to pay the Pikeville Group $ 119,000 as an inducement to this group to sign the papers relating to the transfer of the project. *519 Furthermore, of the total $ 2,000,000 received, $ 50,000 was placed in escrow for the payment of expenses related to the transfer of the project. Of this total $ 50,000 escrow amount, $ 39,078.15 was later spent to cover costs. [4] Petitioner timely filed Form 966, notice of Corporate Dissolution or Liquidation, after the requisite corporate action to dissolve was taken. On the date of the project's transfer, May 12, 1982, petitioner's shareholders, Frank D. Smith and Darrell F. Smith, agreed to liquidate and dissolve petitioner. [5] In accordance with the plan of liquidation and dissolution, petitioner distributed to the Smiths all its assets including its portion of the $ 2,000,000 in proceeds, its percentage interest in the *520 overriding royalty, and its share of the escrow monies which remained after the payment of costs. This distribution was completed by April 30, 1983. On its corporation income tax return filed for the year of its liquidation, petitioner reported a $ 439,437.44 gain on the transfer and cited section 337 as support for its not recognizing this gain. [6]
In its initial pleading, petitioner claimed that respondent had erred in determining that the proceeds of the sale of the Griffithsville Field Pilot Unit Project constitute *521 ordinary income to the extent of $ 431,321.00 because this transaction did not constitute a sale or exchange subject to the nonrecognition provisions of Section 337 of the Internal Revenue Code[and] * * * that the transaction was a subleasing transaction rather than a sale or exchange.
To support its claim, petitioner alleged the following facts: b. On May 12, 1982, the petitioner entered into an agreement to sell the Griffithsville Field Pilot Unit Project to Adobe Oil and Gas Corporation and Newmont Oil Company. f. The petitioner alleges that Section 337 of the Internal Revenue Code contains no provisions as to whether the proceeds from a sale of property constitute capital gain or ordinary income in order to utilize the non-recognition of gain or loss provision. g. The petitioner alleges that the proceeds were for the sale of the Griffithsville Field Pilot Unit Project and not considered to be an advance royalty. i. The petitioner alleges that a royalty interest of .01015% [sic] is not a material amount in relation to the overall transaction.
In answer, respondent denied petitioner's facts b., g., and i. *522 , and admitted fact f. On May 5, 1987, the case was set for an October 5, 1987, trial date in Charleston, West Virginia. On August 24, 1987, respondent filed a motion to compel production of documents; the motion was granted September 2, 1987. While in the process of retaining counsel, petitioner filed a motion for continuance on September 8, 1987. We subsequently denied this motion on September 11, 1987. On September 18, 1987, Mark Garren formally entered his appearance as counsel for petitioner. [7] Mr. Garren represented petitioner in the instant case and was also to represent petitioner in another tax case pending before this Court. In his trial memorandum respondent argued that, though the documents covering the transfer of the experimental project were drafted in terms of a purchase, such characterization was not controlling. He further argued that the retention of the overriding royalty represented an economic interest in oil and gas under the authority of Cox v. United States,497 F.2d 348 (4th Cir. 1974), cert. denied 419 U. S. 1047 (1974), *523 and that such retention turned the project's transfer into a sublease. Consequently, he reasoned that a sublease would not apply to the experimental project's transfer to Newmont and Adobe. In its overdue trial memorandum, petitioner agreed that the issue revolved around whether petitioner's transfer of the project represented a sale or sublease. Petitioner suggested that its retention of the overriding royalty did not represent its retention of an economic interest in oil and gas and cited Strutzel v. Commissioner,60 T.C. 969 (1973), as authority. Petitioner alternatively argued that, under the authority of Day v. Commissioner,54 T.C. 1417 (1970), its overriding royalty represented a de minimis reserved right which would not change the character of the project's transfer from that of a sale to that of a sublease. Finally, petitioner argues that if its retained interest was described as an economic interest, thus making the transfer a sublease, petitioner would be entitled to a depletion allowance, pursuant to section 613, and an offset, pursuant to section 1255, against any remaining, recognized ordinary income. At trial, Mr. Garren spent *524 much time having petitioner's witnesses identify documents to which the parties had previously stipulated. Additionally, this Court noted a number of times at trial its dismay over petitioner's decision to retain counsel so late in the course of these proceedings. After respondent's concession in this case, petitioner submitted its motion and affidavit in support of its receipt of litigation costs. [8] In its motion, petitioner stated that it had incurred total litigation costs equal to $ 31,250.70. These costs represented the sum of $ 15,214.50 in legal fees, $ 15,750 in fees paid petitioner's accountant, and $ 286.20 in miscellaneous costs. In support of the sum reflected as legal fees, petitioner submitted a listing of hours billed by Mr. Garren to petitioner's account from a first billing date of August 7, 1987, to an ending date of March 23, 1988. From August 7, 1987, to January 20, 1988, Mr. Garren billed petitioner for 203.3 hours of legal services. Of this total 203.3 billed hours, approximately 65 hours were spent *525 on legal research prior to trial, approximately 65 hours were spent on legal research after trial, about 30 hours were spent in trial preparation and the trial itself, and close to 40 hours were spent on the drafting of petitioner's opening brief. Mr. Garren billed petitioner at the rate of $ 75 per hour. In support of the sum reflected as fees paid petitioner's accountant, Charles Wright, petitioner submitted a listing of hours billed by Mr. Wright to petitioner's account from a first billing date of January 11, 1986, to an ending date of December 31, 1987. The total hours billed during this period added to 175 hours. Of this total sum, Mr. Wright billed petitioner for 98 hours worth of service from August 7, 1987, the date Mr. Garren started billing petitioner, to December 31, 1987. Of the 98 hours, 8 hours were billed through the date of trial and the remaining 90 hours were billed after the trial date. The hourly rate at which Mr. Wright's services were valued was $ 90 per hour -- $ 15,750 divided by 175 hours. Nothing was presented to this Court which would lead us to the conclusion that Mr. Wright was authorized to practice before this Court. In his response to petitioner's *526 motion for litigation costs, respondent concedes that petitioner has "substantially prevailed" as that term is used in section 7430(c)(2)(A)(ii) and that petitioner has exhausted the administrative avenues available to it within the Service as required by section 7430(b)(1). Respondent additionally does not argue that petitioner fails to meet the requirements of section 7430(a)(2)(A)(iii) or that the litigation costs for which reimbursement is sought are costs associated with a "creditor of the taxpayer involved." Sec. 7430(c)(2)(A). Respondent, however, contends that his litigating position was substantially justified as that phrase is used in section 7430(c)(2)(A)(i) and that the costs claimed by petitioner were not reasonable as required by section 7430(a). In his response to petitioner's motion, respondent explained his eventual concession in this case. He noted that the Congressional intent behind the enactment of section 337 was to avoid an inquiry as to "who made the sale" -- an inquiry which had arisen in the case of Commissioner v. Court Holding Co.,324 U.S. 331 (1945). Noting this intent, respondent elaborated that -- The proper test to apply to *527 determine the corporation's entitlement to the nonrecognition treatment of section 337 was whether petitioner could have distributed the working interest [in the experimental project] as a liquidating dividend without recognizing income thereupon. Since petitioner could indeed have made a liquidating distribution of the working interest to its shareholders without recognizing any gain, petitioner should be treated no differently for initially transferring the working interest and then distributing the proceeds of the transfer to its shareholders. * * *. [9] [Footnote reference added.] Respondent noted that his raising this theory on which he based his concession was at his own instigation and that petitioner had never suggested or raised such a theory. A taxpayer may be awarded reasonable litigation costs in a civil tax proceeding if he is the prevailing *528 party as defined in section 7430(a). To come within the statutory requirements, a taxpayer must (1) establish that the position of the United States in the civil proceeding was not substantially justified; (2) have substantially prevailed in the litigation; and (3) meet the requirements of section 504(b)(1)(B) of Title 5 of the United States Code as in effect on the date of enactment of the tax Reform Act of 1986. [10]Section 7430(c)(2)(A). Further, the "prevailing party" must exhaust his administrative remedies within the meaning of section 7430(b)(1). No award for reasonable litigation costs may be made with respect to any portion of the civil proceeding during which the prevailing party has unreasonably protracted such proceeding. Section 7430(b)(4). All of these conjunctive requirements must be met for an award to be made. Sher v. Commissioner,89 T.C. 79 (1987); Minahan v. Commissioner,88 T.C. 492, 497 (1987). *529 In falling with section 7430, therefore, petitioner bears the burden of showing that respondent's position was not substantially justified. Stieha v. Commissioner,89 T.C. 784, 790 (197). In meeting this burden, petitioner consequently must show that legal precedent given the facts available to this latter party. Cf. DeVenney v. Commissioner,85 T.C. 972, 930 (1985). If we find that respondent's position was "substantially justified," it will be unnecessary for us to consider respondent's second contention that the amount sought in reimbursement is unreasonable. To determine whether respondent's position is substantially justified, we must focus on the position taken by the Government in "the civil proceeding, and any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based." Sec. 7430(c)(4). See also Egan v. Commissioner, 91 T. *530 C.     (September 28, 1988). Having discerned respondent's position, we must judge this position's substantial justification on the basis of reasonableness in light of the position's legal and factual moorings. DeVenney v. Commissioner, 85 T.C. at 930; Sher v. Commissioner,89 T.C. at 84. Respondent's position need not be a guaranteed winner. The mere fact that respondent concedes the case does not automatically mean that his position in the civil proceeding was unreasonable or substantially justified. Baker v. Commissioner,787 F.2d 637, 642 (D.C. Cir. 1986), vacating and remanding 83 T.C. 822 (1984). Prior to his concession in this case, respondent's legal position had been that the transfer of the project to Newmont and Adobe constituted a sublease and not a sale or exchange. Respondent's position was based on the fact that, in negotiating the transfer of the project, petitioner retained for itself and the project's other transferors an overriding royalty in future sales of oil recovered and sold from the properties in the project. Having characterized the transfer as a lease, respondent disallowed petitioner's *531 claim concerning the applicability of section 377. [11]
In Day v. Commissioner,54 T.C. 1417, 1422 (1970), we reiterated the well established legal principle that "where a mineral interest is assigned for a lump-sum cash consideration (usually described as *532 a 'bonus') and the assignor retains a royalty, the transaction is a lease -- under which payments are taxable as ordinary income, like rents -- rather than a sale of capital assets." (Footnote reference omitted.) Additionally, to the extent that the lump sum cash consideration represents an advance royalty payment, this sum qualifies as a prepayment of income which is currently taxable to its recipient regardless of the method of tax accounting employed by the recipient. Hyde Park Realty v. Commissioner,211 F.2d 462, 463 (2d Cir. 1954), affg. 20 T.C. 43 (1953); see also Astor Holding Co. v. Commissioner,135 F.2d 47, 48 (5th Cir. 1943); Commissioner v. Lyon,97 F.2d 70, 73 (9th Cir. 1938); cf. M3l3 v. Commissioner,61 T.C. 358 (1973). Noting these legal maxims, we find that some legal precedent exists which supports respondent's pre-concession position. Petitioner, nevertheless, attacks respondent's preconcession position on the factual ground that its retention of the royalty percentage did not qualify as an economic interest in oil and gas and, alternatively, that its royalty percentage was *533 de minimis in nature and did not have the effect of turning the project's sale into a lease. Petitioner, however, fails to demonstrate that respondent had on hand facts needed to make an accurate determination that petitioner's retained royalty did not represent an economic interest in oil and gas or that the sums received and to be received under petitioner's eventually distributed royalty percentage were de minimis in comparison to other amounts it acquired on the project's transfer. [12] In making this statement, we observe that petitioner has not argued that respondent rested his pre-concession theory on no established facts. With this in mind, we note our recent opinion in Vanderpol v. Commissioner, 91 T.C.     (slip opinion at 6) (Aug. 29, 1988), where we said that as long as the facts on which respondent relies are not "unusually scanty or unworthy of belief," these facts' inability to convince the trier of fact of the ultimate persuasiveness of respondent's position in the proceeding is not reason to hold that this position of respondent is unreasonable or without substantial *534 justification. *535 In noting petitioner's failure to mention facts which support its arguments and which were in respondent's hands, we point out that petitioner was not fully forthcoming in a timely fashion with the dissemination of facts needed by respondent to apprise himself of the justifiability of his position. This can be seen in respondent's having to file a motion to compel the production of documents, a motion which we granted, in a time frame occurring approximately one month before trial. In addition, at trial petitioner moved to introduce documentary evidence into the record which petitioner had not delivered to respondent until the weekend prior to the trial's commencement. Though we admitted this documentary evidence and made it part of this case's record, we find that its late delivery to respondent was not in accord with the guidelines set out in the standing pre-trial order we issued in this case. Petitioner's failure to show that facts needed to refute respondent's pre-concession position were in respondent's possession in time for respondent to consider their bearing on his legal position leads us to the conclusion that petitioner has not demonstrated that respondent's pre-concession *536 theory was without a factual basis on which he could apply established legal principles. At this point, we also ponder what effect petitioner's decision to retain legal counsel so late in the course of these proceedings had on respondent's ability to consider properly the substantial justification underlying his pre-concession theory. In this respect, we note the benefits which often derive from the early give and take of legal adversaries that are represented by individuals well-versed in the workings of this Court and the tax law. Petitioner was very late in choosing counsel competent to practice before this Court. Respondent should not be penalized for the consequences which flowed from petitioner's dilatory action. Without passing on the merits or validity of respondent's concession theory, we point out that the theory originated under the direction of respondent. Petitioner has never suggested that it was at any time the source or proponent of this theory. We also note that, in explaining his concession theory, respondent nowhere conceded that his initially presented litigation theory was essentially in error. [13] That respondent, on his own initiative, arrived at legal *537 theory which appears to have broadened the theoretical underpinnings of section 337 in such a manner as to support petitioner's reporting position is not something for which respondent should be castigated. This is especially true when we note that we have been directed toward no legal authority which suggests that the underlying rationale of section 337 is so broad as to include within the phrase "sale or exchange" any negotiated transfer of a corporate asset by a corporation contemplating liquidation. [14] Without such authority, respondent's adoption of his concession theory was certainly not compelled. Furthermore, it should be noted that respondent's hands may not be tied in advancing a new theory of litigation under a particular provision in his quest properly to protect the fisc. See Gerardo v. Commissioner,552 F.2d 549, 555 (3d Cir. 1977), affg. and revg. a Memorandum Opinion of this Court; Foxman v. Commissioner,41 T.C. 535, 548 (1964), affd. 352 F.2d 466 (3d Cir. 1965). While we do not suggest that respondent's position in this *538 proceeding would either fail or prevail, we do observe that respondent does have the right to test the waters in circumstances not before litigated in order to establish precedent. Otherwise, there would never be proper precedent for different circumstantial contexts. In summation, we find that petitioner has failed to show that respondent's pre-concession theory so lacked of legal support and substantiated factual underpinnings as to be unreasonable and without substantial justification. Because petitioner has not met its burden, we, consequently, deny petitioner's motion for litigation costs in toto. In view of the foregoing, it is unnecessary for us to decide the reasonableness of those litigation costs claimed by petitioner. However, we think it is incumbent to relate *539 our observation that, in filing its motion, petitioner's statement of costs for which it seeks reimbursement appears to us to go beyond the place of what is reasonable in the case before us. First, we note that petitioner has not established that Mr. Wright, its accountant, is authorized to practice before this Court. Costs related to his services would, therefore, not be reimbursable under section 7430 if these costs related to Mr. Wright's handling of the legal aspects of petitioner's litigation and were not incurred while Mr. Wright was under the employ or direction of an individual authorized to practice before this Court. See sections 7430(c)(1)(A) and (B). Second, petitioner's counsel has billed his client many hours for the research and writing of an opening brief in this case. We have, however, never received a copy of this brief. Were we to value the services provided by petitioner's counsel, a copy of this brief would prove helpful. See Mearkle v. Commissioner,90 T.C. 1256, 1262 (1988). Third, petitioner's counsel mentioned that he was also employed to represent petitioner in another case pending before this Court. Petitioner has, however, not clearly *540 shown us that amounts claimed in this motion for costs were tied solely to the issues presented in this case. See Mearkle v. Commissioner, supra.
To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. All rule references are to the Tax Court Rules of Practice and Procedure. All section references, unless otherwise noted, are to the Internal Revenue Code of 1986, as amended and in effect during the taxable year petitioner filed this motion for litigation costs. ↩
2. All references to sec. 337 throughout this opinion are to sec. 337 of the Internal Revenue Code of 1954, as amended and in effect during the taxable year of petitioner's liquidation. In pertinent part, sec. 337 provides: If, within the 12-month period beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then nongain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period. ↩
3. Petitioner retained a 29-percent interest in the 3-1/3 percent overriding royalty. Thus, petitioner acquired a 1.015-percent (29 percent of 3.5 percent) overriding royalty on the project's transfer. ↩
4. Petitioner never suggests that the overriding royalty represents an "asset retained to meet claims" as that phrase is defined in sec. 337↩. The amounts held in escrow, therefore, appear to represent the only such asset retained to meet claims. 5. Frank Smith, the former president of Guyan Oil, died in March of 1984. Darrell Smith was formerly petitioner's vice president. ↩
6. Respondent gave no explanation in the notice of deficiency to petitioner for his determination that petitioner's income was increased by only $ 431,321.00, and not by $ 439,437.44, on petitioner's transfer of the project. In his trial memorandum, however, respondent states, "The $ 2 million payment pursuant to the sublease is taxable as ordinary income subject to depletion." We surmise that this statement concerning an allowance for depletion endeavors to provide an explanation for the above mentioned income difference. ↩
7. Darrell and Zelda Smith signed the attorney fee contract employing Mr. Garren on September 9, 1987. ↩
8. Petitioner's motion for litigation costs was filed on March 7, 1988. Petitioner's affidavit in support of its motion was filed June 10, 1988. ↩
9. As we understand respondent's concession theory, he essentially suggests that, in negotiating the transfer of the experimental project, petitioner acted as a mere agent of its shareholders and not as a party to the transfer.↩
10. Sec. 504(b)(1)(B) of Title 5 of the United States Code defines a party as one -- who is (i) an individual whose net worth did not exceed $ 2,000,000 at the time the adversary adjudication was initiated, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $ 7,000,000 at the time the adversary adjudication was initiated, and which had not more than 500 employees at the time the adversary adjudication was initiated; * * *.
Sec. 7430(c)(2)(A)(iii) states parenthetically that "the commencement of the proceeding described in subsection (a)" of 7430 is to be read "in lieu of the initiation of the adjudication referred to" in 5 U.S.C. sec. 504(b)(1)(B) (1988)↩. 11. To fall within the literal language of sec. 337, petitioner must show that it meets that section's requirement that a "sale or exchange" has transpired. In initially arguing that petitioner has not met this requirement, respondent takes advantage of his right to litigate all aspects of a section's statutory language and to require petitioner to show that it is truly entitled to the benefits of the section it cites in support of its reporting position. Cf. Wardman v. Commissioner,24 B.T.A. 102, 109 (1931), affd. 68 F.2d 418 (D.C. Cir. 1933); San Carlos Milling Co., Ltd. v. Commissioner,24 B.T.A. 1132, 1142 (1931), affd. 63 F.2d 153↩ (9th Cir. 1933). 12. As an example of petitioner's failure, we note that, citing Day v. Commissioner,54 T.C. 1417 (1970), petitioner pointed solely to its overriding royalty percentage and argues that it was undoubtedly de minimis. If, however, Day is to serve as judicial authority for petitioner's position, it must be factually shown that "The reserved rights are obviously de minimis when compared with the rights conveyed." Day v. Commissioner,54 T.C. at 1424. The value of petitioner's conveyed rights in the case at hand was equal to petitioner's portion of the $ 2,000,000 proceeds. The value of petitioner's reserved rights was equal to the present discounted value of a stream of income tied to petitioner's retained royalty. Though information going to the value of petitioner's conveyed rights was clearly available, no evidence going to the value of petitioner's reserved rights appears to be on hand. However, evidence tied to this latter value could have easily been established. Petitioner's accountant could have prepared a series of income projections tied to the discounted income flow. Petitioner, nevertheless, has not shown that it provided respondent with such income projections, that it assisted respondent in the preparation of such evidence, or that it provided respondent with figures from which such projections could have been prepared. Without the help of petitioner, the party most in control of the needed information, respondent cannot be faulted from having initially decided that petitioner's retained royalty interest was not de minimis as required by Day.
At this point we note that at trial petitioner's witness, Darrell Smith, stated that he received $ 4,600 in total royalty payments from 1983 to March 1987. Mr. Smith received these royalty payments as a result of petitioner's liquidating distribution of the overriding royalty. No corroborating evidence, however, was presented which substantiated this $ 4,600 figure. Finally, though petitioner relies on Day's de minimis exception, we have found no cases which apply this exception within the context of a sec. 337↩ liquidation. It would appear that, had we decided this issue going to the exception's applicability, it would have been a case of first impression. 13. In presenting his concession theory, respondent never conceded that a sale or exchange of the project had transpired, that petitioner's retained overriding royalty did not represent an economic interest in oil and gas, or that this retained royalty was de minimis in nature. ↩
14. Neither respondent nor petitioner has cited any direct authority which demonstrates respondent's concession theory. ↩